UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CRISTOBAL ESCOBAR TORRES, LUCIO : 
LEON DECIDERIO, and JUAN PABLO : 
DECIDERIO-RIOS, :      **REPORT AND**
    :      **RECOMMENDATION**
         Plaintiffs, : 
    :      17-CV-2866 (RJD) (PK)
      -against- : 
    : 
JIN XIANG TRADING INC., and BAO WEI : 
CHEN, : 
    : 
         Defendants. : 
------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Cristobal Escobar Torres, Lucio Leon Deciderio, and Juan Pablo Deciderio-Rios[1] (collectively, "Plaintiffs") brought this action against Jin Xiang Trading Inc. and Bao Wei Chen (collectively, "Defendants"), alleging various violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") §§ 190 and 650 *et seq.* (*See* Compl., attached to the Notice of Removal, Dkt. 1-1.)

Before the Court on referral from the Honorable Raymond J. Dearie is Plaintiffs' Motion for Default Judgment against Defendants ("Motion") (Dkt. 30, 31.)  For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted and damages awarded as detailed below.

---

[1] The action was brought by Plaintiffs Torres, Deciderio, and Deciderio-Rios individually and on behalf of other similarly situated plaintiffs. However, Plaintiffs have moved for default judgment individually only.  (*See* Dkt. 30.)

**BACKGROUND**

I.      **Factual Background**

Jin Xiang Trading Inc. ("Jin Xiang") is a corporation organized under New York state law and operates a nondurable grocery goods store and wholesale beer distribution business at 503 Morgan Avenue, Brooklyn, New York, 11222. (Compl. ¶¶ 3, 11, 36; Memorandum of Law in Support of Plaintiffs' Motion to Strike Answer and for Entry of Default Judgment against Defendants ("Pls. Mem.") at 1 ¶ 3, Dkt. 30-10.)  Bao Wei Chen ("Chen") is an owner, manager, principal, and/or agent of Jin Xiang.  (Compl. ¶ 3.)

Plaintiffs were employed by Defendants as delivery men and store helpers.  (Compl. ¶¶ 37-40; Declaration of Sang J. Sim, Esq. in Support of Plaintiffs' Motion for Default Judgment ("Sim Decl.") ¶ 20, Dkt. 30-1; Ex. H to the Sim Decl. (comprised of Affidavit of Plaintiff Cristobal Escobar Torres in Support of Motion for Default Judgment ("Torres Aff.") ¶¶ 5(a), (b); Affidavit of Plaintiff Lucio Leon Deciderio in Support of Motion for Default Judgment ("Deciderio Aff.") ¶¶ 5(a), (b); and Affidavit of Plaintiff Juan Pablo Deciderio-Rios in Support of Motion for Default Judgment ("Deciderio-Rios Aff.") ¶¶ 5(a), (b), Dkt. 30-9.)  Torres worked for Defendants from February 1, 2014 until October 12, 2015; Deciderio worked from April 1, 2014 until October 12, 2015; and Deciderio-Rios worked from June 1, 2013 until October 12, 2015.  (Compl. ¶¶ 37-39; Torres Aff. ¶¶ 5(a), (b); Deciderio Aff. ¶¶ 5(a), (b); Deciderio-Rios Aff. ¶¶ 5(a), (b).)  Plaintiffs' duties included but were not limited to conducting deliveries for Jin Xiang.  (Compl. ¶ 40.) Defendants have gross revenues in excess of $500,000 and derive substantial revenues from interstate commerce.  (Compl. ¶¶ 20, 70.)

Throughout Plaintiffs' employment, Plaintiffs worked six days per week.  (Compl. ¶ 41; Torres Aff ¶ 5(c); Deciderio Aff. ¶ 5(c); Decidio-Rios Aff. ¶ 5(c).)  Deciderio and Deciderio-Rios worked 13 hours per day.  (Deciderio Aff. ¶ 5(c); Deciderio-Rios Aff. ¶ 5(c).)  Torres worked 12

2

hours per day.  (Torres Aff. ¶ 5(c).)  Throughout Plaintiffs' employment, Defendants paid them a fixed cash salary per week, which was supposed to be compensation based on 40 hours of work per week.  (Compl. ¶¶ 41, 45, 50; Torres Aff. ¶ 5(d); Deciderio Aff. ¶ 5(d); Deciderio-Rios Aff. ¶ 5(d).) Torres was paid $510 per week.  (Torres Aff. ¶ 5(d).)  Deciderio was paid $480 per week.  (Deciderio Aff. ¶ 5(d).)  Deciderio-Rios was paid $540 per week from the date he was hired, June 1, 2013, until February 12, 2015, and then $600 per week from February 13, 2015 until he was terminated on October 12, 2015.  (Deciderio-Rios Aff. ¶ 5(d).)

Throughout Plaintiffs' employment, Defendants did not provide them with a written wage notice or accurate wage statements.  (Compl. ¶¶ 42-43, 46-48, 62, 64; Torres Aff. ¶ 5(f); Deciderio Aff. ¶ 5(f); Deciderio-Rios Aff. ¶ 5(f).)

## II.   **Procedural Background**

Plaintiffs filed the Complaint on March 13, 2017 in the Supreme Court of the State of New York, County of Queens.  (Dkt. 1-1.)  Defendant Chen was served on April 11 and April 13, 2017, both at Jin Xiang's premises and at his home.  (Sim Decl. ¶ 3; Ex. B. to the Sim Decl., Affidavits of Service, Dkt. 30-3.)  Defendant Jin Xiang was served on April 19, 2017.  (Sim Decl. ¶ 3; Affidavits of Service.)  Defendants, through their counsel, Kenneth K. Ho, Esq., filed a Notice of Removal to this Court on May 10, 2017.  (Dkt. 1.)  Defendants filed an Answer on June 7, 2017 and appeared for an Initial Conference in this Court on June 30, 2017.  (*See* Answer, Dkt. 5; Minute Entry dated 6/30/2017.)  The parties participated in a Settlement Conference on September 6, 2017, but were unable to settle.  (*See* Minute Entry dated 9/6/2017.)  The individual parties were deposed in November 2017.  (Sim Decl. ¶ 7.)  The parties certified the close of discovery on November 21, 2017, and submitted a Proposed Joint Pre-Trial Order on January 8, 2018.  (Sim Decl. ¶ 8; Letter Certifying Close of Discovery, Dkt. 16; Proposed Pretrial Order, Dkt. 19.)  The parties appeared before the Honorable Raymond J. Dearie for a pre-trial conference on May 10, 2018.  (*See* Minute

3

Entry dated 5/10/2018.)  After scheduling issues were resolved, the Court issued Certificates of

Engagement for trial to begin on August 5, 2019.  (Joint Letters to Adjourn Trial, Dkts. 20-21;

Certificates of Engagement, Dkts. 22-23; Electronic Order dated 8/3/2018.)

Defendants failed to appear for the pre-trial conference on June 18, 2019.  (*See* Minute Entry

dated 6/18/2019.)  Thereafter, counsel for Defendants, Kenneth K. Ho, Esq., moved to withdraw

as counsel because Defendant Chen, "who is also sole owner and president of the corporate

defendant and has been in China since before the New Year," "disagree[d] with the proposed

strategy of counsel in defending this case."  (Certification of Kenneth K. Ho, Esq. in Support of His

Motion to Withdraw as Attorney for the Defendants, Jin Xiang Trading Inc., and Bao Wei Chen ¶ 5,

Dkt. 25-1.)  Judge Dearie granted Defense counsel's motion to withdraw and allowed Defendants an

additional thirty days, until July 26, 2019, to appear by counsel.  (Order dated 7/16/2019.)  Neither

Defendant appeared, with or without counsel, and Plaintiffs subsequently requested and the Clerk of

the Court entered a default on August 27, 2019.  (Request for Certificate of Default, Dkt. 28; Clerk's

Entry of Default, Dkt. 29.)

Plaintiff filed the Motion on August 27, 2019, requesting default judgment under the FLSA

and the NYLL and seeking payment of unpaid overtime wages, spread-of-hours pay, liquidated

damages, wage notice and statement violation damages, and the ability to seek attorneys' fees and

costs.  Plaintiffs also sought to strike Defendants' Answer.  (Motion, Dkt. 30; Memorandum in

Support of Motion, Dkt. 31.).

## DISCUSSION

### I.        Standard for Default Judgment[2]

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is

a default during the course of litigation.  *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of

judgment against a party who fails to defend."  *Id; see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty.*

*Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  First, when a defendant "has failed to plead

or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then,

the plaintiff must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, but so may failure to defend at later stages of

litigation.  Here, Defendants initially made an appearance through licensed counsel, as required for

corporations.  *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).  They filed an

Answer and litigated the case until shortly before trial, when Defendants discharged their counsel.

(*See* Answer; Motion to Withdraw as Attorney.)  They did not obtain new counsel by the Court-

ordered deadline, and they have not appeared in this case since.  (*See* Minute Entry dated

6/20/2019.)

A default "constitutes an admission of all well-pleaded factual allegations in the complaint

and the allegations as they pertain to liability are deemed true."  *United States v. Myers*, 236 F. Supp. 3d

702, 706 (E.D.N.Y. 2017) (citations omitted).  However, "just because a party is in default, the

plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co.*,

---

[2] In addition to default judgment, Plaintiffs move to strike Defendants' answer.  (*See* Pls. Supp. Mem. at 23, Proposed Order at 3.)  The undersigned construes this as a motion brought pursuant to Fed. R. Civ. P. 12(f), which allows the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The undersigned respectfully recommends that this portion of Plaintiffs' motion be denied as moot, because entry of default judgment against Defendants has the same effect.  *See, e.g., Gustavia Home, LLC v. Vaz*, No. 17-CV-5307 (ILG) (RER), 2019 WL 3752772, at *3 (E.D.N.Y. Aug. 8, 2019).

696 F. Supp. 2d at 208.  The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27; (2) the plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages.  *See GuideOne Specialty Mut. Ins.* Co., 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *4 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129.  The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence, detailed affidavits, or testimony at an inquest.  *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 346 (E.D.N.Y. 2010).  The amount of damages, if any, must be ascertained "with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83-84 (E.D.N.Y. 2012).  When a plaintiff claims FLSA and NYLL violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct."  *Gunawan*, 897 F. Supp. 2d at 83.

## II.   Jurisdiction

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action.  *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010).  The Court may also inquire as to whether it has personal jurisdiction.  *See Mickalis*, 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

## A. Subject Matter Jurisdiction

This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331. This Court additionally has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367.

## B. Personal Jurisdiction and Service

"[A] court may not properly enter a default judgment until it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050 (FB) (CLP), 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015). An individual may be served according to state law where service is made. Fed. R. Civ. P. 4(e)(1). Likewise, a corporation may be served in the same manner for serving an individual as prescribed by Federal Rule of Civil Procedure 4(e)(1) or by delivering a copy of the Summons and Complaint to an officer appointed by law to receive such service. Fed. R. Civ. P. 4(h)(1). Defendant Chen was properly served with the Summons and Complaint in accordance with the service requirements of the New York Civil Practice Law & Rules ("C.P.L.R."). On April 11, 2017, a relative of Chen of suitable age and discretion, accepted the Summons and Complaint at Chen's residence. (Affidavits of Service at PageID #193.) *See* C.P.L.R. 308(2) (McKinney). Additionally, the Summons and Complaint were mailed to Chen at the same address. *See id.* Chen was also served at Jin Xiang's business address on April 13, 2017 through another relative of suitable age and discretion, who accepted the Summons and Complaint. (*Id.* at PageID #192.) The Summons and Complaint were also mailed to Chen at Jin Xiang's business address. *See id.* Likewise, Defendant Jin Xiang was properly served with the Summons and Complaint through service on the Office of the Secretary of the State of New York. (*Id.* at PageID #194.) *See* C.P.L.R. 308(3); *see also* N.Y. Bus. Corp. Law § 306.

### III.     __Procedural Compliance__

Plaintiffs filed the following documents in support of the Motion: Notice of Motion (Dkt. 30); Memorandum of Law in Support of Plaintiffs' Motion to Strike Answer and for Entry of Default Judgment Against Defendants ("Pls. Mem.") (Dkt. 30-10), Supplemental Memorandum of Law in Support of Plaintiffs' Motion to Strike Answer and for Entry of Default Judgment Against Defendants ("Pls. Supp. Mem.," Dkt. 31); declarations and affidavits in support (Dkt. 30-1, 30-9); the Clerk's Certificate of Default (Dkt. 29); the Complaint (Dkt. 30-2); a proposed order (Dkt. 31-1); proof of service of the Complaint (Dkt. 30-3); and proof of mailing of the Motion to the defaulting parties (Dkt. 30-11, 31-2.)  These documents are in compliance with Local Civil Rules 7.1 and 55.2.

### IV.     __Liability__

In determining liability, the Court accepts as true the well-pleaded allegations of the Complaint, drawing all reasonable inferences in favor of Plaintiffs.  *See Finkel*, 577 F.3d at 84; *see also Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158-59.  Plaintiffs claim that Defendants are liable for unpaid overtime wages, spread-of-hours premiums, statutory violations of both wage notice and statement requirements, liquidated damages, and attorneys' fees and costs under the FLSA and NYLL. (Compl. ¶¶ 66, 76-78, 86-89, *ad damnum* clause.)  Since Defendant Chen is an owner, officer, and/or agent of Defendant Jin Xiang, he is jointly and severally liable with it for any violations under the FLSA and NYLL.  *See Mahoney*, 2016 WL 6585810, at *9.

#### A. Employment Relationship Under the FLSA

In order to support a cause of action under the FLSA, Plaintiffs must show an employment relationship with Defendants and establish that: (1) Defendants are employers subject to the FLSA; (2) Plaintiffs are employees within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb.

28, 2017), *vacated sub nom. on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018); *see also* 29 U.S.C. §§ 203, 213 (2019).

The FLSA broadly describes an employer as "any [person or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013). A defendant is an FLSA employer if he or she meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8366837, at *4. The enterprise coverage test considers whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Res. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).

The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo*, 2016 WL 8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

The Complaint alleges that Defendants "had gross revenues in excess of $500,000.00." (Compl. ¶ 70.) The Complaint further alleges that Jin Xiang "derives substantial revenues from interstate or international commerce." (Compl. ¶ 20.) In the context of default, the Court may accept uncontested allegations as true and make reasonable inferences. *See e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120-121 (E.D.N.Y. 2011) (finding it logical to infer that janitorial cleaning supplies used by residential and commercial cleaners originated outside of New York and moved in interstate commerce); *see also Fermin*, 93 F. Supp. 3d at 33 (reasonable to infer that the

"myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000 in annual sales do not exclusively come from New York State"); *see also Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD) (JO), 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state . . ."). The Court may reasonably infer that the "myriad" of materials needed to operate a nondurable grocery goods and wholesale beer distribution business with a gross revenue of at least $500,000 do not come from New York exclusively. *See Fermin*, 93 F. Supp. 3d at 33. It may also infer that some of these "materials moved or were produced in interstate commerce." *Id.*; *see also* 29 U.S.C. § 203(b).

Accordingly, for the purpose of this default judgment, these allegations are sufficient to establish that Jin Xiang is an enterprise engaged in interstate commerce, and therefore is an employer under the FLSA.

In addition, a person within a company who "exercises operational control over the employee in question" may be liable as an "employer" under the FLSA. *See Irizarry,* 722 F.3d at 102, 110. Courts in the Second Circuit assess operational control by applying the "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Id.* at 104. The economic reality test looks at "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (explaining that no single *Carter* factor alone is dispositive, as the test encompasses the totality of the circumstances).[3] The

---

[3] The Department of Labor recently adopted a rule similar to the economic reality test, derived from *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), to clarify joint employer status using a four-factor test, which examines whether the alleged joint employer: "(1) Hires or fires the employee; (2)

"ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotations omitted).

Plaintiffs' well-pleaded allegations establish that Defendants jointly employed Plaintiffs and shared control over them. (Compl. ¶¶ 3, 21-29.) Defendants hired Plaintiffs as store helpers and delivery men. (Compl. ¶ 37-40.) Defendants had the power to hire and fire Plaintiffs. They also controlled the terms and conditions of their employment, and determined the rate and method of their payment. (Compl. ¶¶ 23, 26.) These facts support the conclusion that Defendants were Plaintiffs' employer under the FLSA. *Herman*, 172 F.3d at 139.

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). In addition to the well-pleaded allegations in the Complaint, Plaintiffs provided sworn statements that Defendants employed them as store helpers and delivery men. (Torres Aff. ¶ 5(a); Deciderio Aff. ¶ 5(a); Deciderio-Rios Aff. ¶ 5(a).) Plaintiffs thus fall within the FLSA's definition of "employees."

Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). Plaintiffs do not fall within an exempted category such as "executive employee," "creative

---

supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records." 85 Fed. Reg. 2820 (Jan. 16, 2020) (to be codified at 29 C.F.R. pt. 791). This new rule does not appear to impact the analysis of whether Defendants here would be considered joint employers.

professional," or "learned professional." *Fermin*, 93 F. Supp. 3d at 32 (citation omitted). Specifically, Plaintiffs were not "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise, … and who has the authority to hire or fire other employees…." 29 C.F.R. § 541.100. Accordingly, Plaintiffs are non-exempt employees under the FLSA.

Plaintiffs have shown that the FLSA applies here.

**B. Employment Relationship Under the NYLL**

Plaintiffs must show that their employment relationship with Defendants falls within the NYLL, which governs "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190 (McKinney). The NYLL broadly defines an employee as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. Law § 651(5). As discussed above, Plaintiffs have established that they were employees.

An employer is any individual or corporation "acting as employer." N.Y. Lab. Law § 651(6). Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *See Saucedo*, 2016 WL 8376837, at *6. The FLSA's definition of "employer" is "nearly identical" to that of the NYLL, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Since Defendants are employers under the FLSA, they are also employers under the NYLL.

Plaintiffs have shown that the NYLL applies.

12

### C.  Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a).  Plaintiffs have requested a limitations period of two years for their federal claim. (Pls. Supp. Mem. at 16.)  The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).  Plaintiffs filed the Complaint on March 13, 2017.  Therefore, they may recover for FLSA violations that occurred on or after March 13, 2015 through October 12, 2015.

Under the NYLL, the statute of limitations is six years.  *See* N.Y. Lab. Law §§ 198(3), 663(3).  Therefore, Plaintiffs may recover for NYLL violations that occurred during the entirety of their employment with Defendants—from June 1, 2013 through October 12, 2015.

### D.  Overtime (FLSA and NYLL)

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL).  In the Second Circuit, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), providing "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that she "worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201; *see also Fermin*,

93 F. Supp. 3d at 44-45 (allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiffs seek overtime compensation for every week in which they worked for Defendants. Plaintiffs allege that they received a fixed weekly salary that was supposed to be payment for 40 hours of work.  Torres received $510 per week, Deciderio received $480 per week, and Deciderio-Rios received $540 per week from June 1, 2013 until February 12, 2015, and $600 per week from February 13, 2015 until October 12, 2015.  (Torres Aff. ¶ 5(d); Deciderio Aff. ¶ 5(d); Deciderio-Rios Aff. ¶ 5(d).)  Based on a 40-hour work week, Plaintiffs correctly calculated their hourly rates: Torres' hourly rate of pay was $12.75, Deciderio's hourly rate was $12, and Deciderio-Rios' hourly rate was $13.50 from June 1, 2013 until February 12, 2015, at which point it increased to $15.  (Torres Aff. ¶ 5(e); Deciderio Aff. ¶ 5(e); Deciderio-Rios Aff. ¶ 5(e).)[4]

Accepting Plaintiffs' allegations as true that they worked between 12-13 hours per day, for six days a week, the undersigned finds that they have established a claim for overtime wages. (Torres Aff. ¶ 5(c); Deciderio Aff. ¶ 5(c); Deciderio-Rios Aff. ¶ 5(c).)

### E.  Spread-of-Hours Compensation (NYLL)

Plaintiffs allege that Defendants failed to pay them spread-of-hour premiums.  (Compl. ¶¶ 45, 63; Proposed Order at 3.)  Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total number of days that the

---

[4] Plaintiffs alleged in their Complaint and in their Proposed Order attached to the Motion that "Defendants violated New York Labor Law Section 652 by failing to pay Plaintiffs the statutory minimum wage," but do not explain the basis for this alleged violation in their Memoranda of Law.  (*See* Proposed Order at 2; Compl. ¶ 60, *ad damnum* clause (d).)  Indeed, Plaintiffs' affidavits explicitly state hourly rates that were above both the federal and New York State minimum wage rates throughout their employment.  Accordingly, the undersigned respectfully recommends that damages not be awarded based on failure to pay minimum wages.

employee worked more than ten hours.  *Id.*  However, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation."  *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019), *R&R adopted* (Docket Order dated 3/4/2019) (citing *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473-74 (E.D.N.Y. 2011)); *see also Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *9 (S.D.N.Y. May 31, 2019), *R&R adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019).

Based on Plaintiffs' allegations, their hourly rates of pay were between $12 and $15 throughout their employment, which are well above the applicable minimum wage rates. Accordingly, the undersigned recommends that Plaintiffs' request for spread-of-hours premium be denied.

### F.  Wage Notice and Wage Statement Violations under NYLL

NYLL § 195(1) requires employers to give employees a notice stating their rate of pay, how they will be paid, and other information.  Plaintiffs allege that Defendants failed to give them wage notices pursuant to Section 195(1).  (Compl. ¶¶ 42, 46-48, 61, 65, 85; Torres Aff. ¶ 5(f); Deciderio Aff. ¶ 5(f); Deciderio-Rios Aff. ¶ 5(f).)

Section 195(3) requires employers to give employees "a statement with every payment of wages," listing information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3).  Plaintiffs allege that Defendants failed to give them wage statements pursuant to Section 195(3).  (Compl. ¶¶ 42, 43, 62, 85; Torres Aff. ¶ 5(f); Deciderio Aff. ¶ 5(f); Deciderio-Rios Aff. ¶ 5(f).)

Accepting Plaintiffs' allegations as true, the undersigned finds that Plaintiffs have established Defendants' liability for failure to provide wage notices and statements.

## V.   <u>Damages</u>

### A.  *Overtime (FLSA and NYLL)*

Overtime compensation is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater.  *See* 29 U.S.C. § 207; 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  Because Plaintiffs' regular hourly rates of pay exceeded minimum wage rates,[5] their base rate of pay is used to calculate the overtime rate.  The following table provides the amount of overtime wages owed[6]:

---

[5] The federal minimum wage rate throughout Plaintiffs' employment was $7.25 per hour.  The New York minimum wage rate was $7.15 per hour from June 1, 2013 until December 30, 2013, at which point it increased to $8.00 per hour, and it increased again on December 31, 2014 to $8.75 per hour, and remained $8.75 through October 12, 2015.  New York City did not implement its own minimum wage until 2016.  *See* 29 U.S.C. §§ 206(a); N.Y. Lab. Law § 652.

[6] Although Plaintiffs' calculations used partial weeks, damages were calculated here by rounding down to the nearest whole number of weeks because Plaintiffs would unlikely accrue overtime compensation in a partial work week.  (*See* Torres Aff. ¶ 5(e); Deciderio Aff. ¶ 5(e); Deciderio-Rios Aff. ¶ 5(e).)

| Plaintiff | Dates Worked | Payment/ Week | Hourly Rate (based on 40-hour work week) | Hours worked /week | Overtime Owed/week | Total Overtime owed |
|---|---|---|---|---|---|---|
| Torres | 2/1/2014-10/12/2015 | $510 | $12.75 | 72 (12x6) | 32 hours x $19.13 = $612.16 | **$53,870** (2014: 48 weeks + 2015: 40 weeks) x $612.16 |
| Deciderio | 4/1/2014-10/12/2015 | $480 | $12 | 78[7] (13x6) | 38 hours x $18 = $684 | **$54,036** (2014: 39 weeks + 2015: 40 weeks) x $684 |
| Deciderio-Rios | 6/1/2013-10/12/2015 | $540 (6/1/2013-2/12/2015); $600 (2/13-10/12/2015) | $13.50 (6/1/2013-2/12/2015); $15 (2/13-10/12/2015) | 78 (13x6) | 38 hours x $20.25 (from 6/1/2013-2/12/2015)= $769.50; 38 hours x $22.50 (from 2/12/2015-10/12/2015)= $855 | **$96,786** (2013: 30 weeks x $769.50 + 2014: 52 weeks x $769.50 + 2015: 6 weeks x $769.50 + 2015: 34 weeks) x $855 |

Accordingly, the undersigned respectfully recommends that **Torres be awarded $53,870**, **Deciderio be awarded $54,036, and Deciderio-Rios be awarded $96,786 in overtime damages**.

### B. *Spread-of-Hours Premium (NYLL)*

Since Plaintiffs did not establish Defendants' liability under the NYLL's spread-of-hours provision, they are not entitled to damages thereunder.

---

[7] Deciderio's Affidavit states that he "worked thirteen (13) hours per day for six (6) days per week." (Deciderio Aff. ¶ 5(c).)  This comes out to 78 hours per week, notwithstanding that his damages calculation states that he worked "76 hours/week."  (*Id.* ¶ 5(e).)

### C. Recordkeeping Violations under NYLL

#### 1. Wage Notice

Violations of NYLL § 195(1) mandate damages of $50 per work day, for a maximum of $5,000.  N.Y. Lab. Law § 198 (1-b).  Accepting the allegations in the Complaint and Plaintiffs' sworn statements in their affidavits as true, as the Court must on a motion for default judgment, Plaintiffs worked six days per week for a minimum of 79 weeks, or 474 work days.  (Compl. ¶ 37-39; Torres Aff. ¶ 5(a); Deciderio Aff. ¶ 5(a); Deciderio-Rios Aff. ¶ 5(a).)  Fifty dollars per day multiplied by 474 equals $23,700.  Accordingly, the undersigned respectfully recommends that Plaintiffs each be awarded the maximum statutory damages of **$5,000 for Defendants' violation of NYLL § 195(1).**

#### 2. Wage Statements

Section 195(3) mandates damages of $250 per work day for violations, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d).  Plaintiffs likewise established that Defendants failed to provide wage statements at any point during their tenure, thereby violating the NYLL.  Since the statutory damages are $250 per work day, up to a maximum of $5,000, the undersigned respectfully recommends that Plaintiffs each be awarded the maximum statutory damages of **$5,000 for violation of NYLL § 195(3)**.

### D. Liquidated Damages (FLSA and NYLL)

Plaintiffs seek liquidated damages.  Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid overtime compensation.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages.  29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).  Since Defendants failed to respond to the Motion, no good faith exists and liquidated damages are appropriate.  *See Herrera v. Tri-State*

*Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  In light of the principle that "the law providing the greatest recovery will govern," Plaintiffs may be awarded liquidated damages pursuant to the NYLL or the FLSA. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015).  Liquidated damages are not available for violations of the NYLL wage notice and statement provisions.  N.Y. Lab. L. § 198(1-a), (1-d).

Based on the recommendation above that Torres be awarded **$53,870** in overtime wages, Deciderio be awarded **$54,036** in overtime wages, and Deciderio-Rios be awarded **$96,786** in overtime wages, the undersigned respectfully recommends that Plaintiffs be awarded those identical amounts in **liquidated damages under the NYLL**.

### E.  *Pre-Judgment Interest*

Although Plaintiffs did not explicitly seek pre-judgment interest, they would be entitled to recover pre-judgment interest on their unpaid wages pursuant to NYLL § 198(1-a) and C.P.L.R. 5001, and courts have awarded pre-judgment interest when the plaintiff has sought other relief the Court deems appropriate.[8]  *See* N.Y. Lab. L. § 198(1-a) ("In any actions instituted in the courts upon a wage claim by an employee . . .in which the employee prevails, the court shall allow such employee to recover. . .prejudgment interest as required under the civil practice law and rules. . ."); C.P.L.R. 5001(a); *Setty v. Fitness*, No. 17-CV-06504 (NGG) (SMG), 2018 WL 8415414, at *16 (E.D.N.Y. Dec. 18, 2018), *R&R adopted sub nom.*, 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) ("Plaintiffs do not

---

[8] In their Complaint, and in their Motion and Memoranda of Law, Plaintiffs sought "such other and further relief as this Court deems just and proper." (Compl. *Ad damnum* clause (f); Motion; Pls. Mem. at 6; Pls. Supp. Mem. at 23.)

explicitly request prejudgment interest in their complaint, but Plaintiff Setty is clearly entitled to recover prejudgment interest on his unpaid wages under the NYLL."); *Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635 (GBD) (JLC), 2019 WL 4195194, at *6 n.7 (S.D.N.Y. Sept. 5, 2019), *R&R adopted*, 2019 WL 6170058 (S.D.N.Y. Nov. 19, 2019) (awarding pre-judgment interest where plaintiff requested "further relief as the Court may deem equitable, just, and proper.")

Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16 (citation omitted).  The statutory interest rate in New York for pre-judgment interest is nine percent per annum.  C.P.L.R. 5004.  Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "the earliest ascertainable date the cause of action existed," or a midway point between when the plaintiff began and ended work if damages were incurred at various times.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing C.P.L.R. 5001(b)).

Because Plaintiffs were denied adequate wages throughout their employment, the Court will use an intermediate date for each Plaintiff.

For Torres, the mid-way point between February 1, 2014 and October 12, 2015 is December 6, 2014.  Pre-judgment interest on actual damages of $53,870, for overtime pay, at a rate of nine percent per annum, is $13.28 per day for the 310 days from December 6, 2014 until October 12, 2015, for a total of $4,116.80.  Accordingly, the undersigned respectfully recommends that **Torres be awarded pre-judgment interest of $4,116.80 plus $13.28 per day from October 13, 2015 to the date of judgment.**

For Deciderio, the mid-way point between April 1, 2014 and October 12, 2015 is January 5, 2015.  Pre-judgment interest on actual damages of $54,036, for overtime pay, at a rate of nine percent per annum, is $13.32 per day for the 280 days from January 5, 2015 until October 12, 2015,

for a total of $3,729.60.  Accordingly, the undersigned respectfully recommends that **Deciderio be awarded pre-judgment interest of $3,729.60 plus $13.32 per day from October 13, 2015 to the date of judgment.**

For Deciderio-Rios, the mid-way point between June 1, 2013 and October 12, 2015 is August 6, 2014.  Pre-judgment interest on actual damages of $96,786, for overtime pay, at a rate of nine percent per annum, is $23.87 per day for the 432 days from August 6, 2014 until October 12, 2015, for a total of $10,311.84.  Accordingly, the undersigned respectfully recommends that **Deciderio-Rios be awarded pre-judgment interest of $10,311.84 plus $23.87 per day from October 13, 2015 to the date of judgment.**

### F.  *Post-Judgment Interest*

Plaintiffs did not seek post-judgment interest.  However, such interest "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); *see, e.g.*, *Fermin*, 93 F. Supp. 3d at 53; *see also Canaveral*, 2019 WL 4195194, at *7 (S.D.N.Y. Sept. 5, 2019).  Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961.  *See Tacuri v. Nithun Constr. Co.* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015).  Accordingly, the undersigned respectfully recommends that Plaintiffs each be awarded **post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.**

### G.  *Attorneys' Fees and Costs*

Plaintiffs seek reasonable attorneys' fees, which they are entitled to recover under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  District courts have broad discretion to determine the amount awarded, and the party requesting fees must submit documentation to support its claims.  *Mahoney*, 2016 WL 6585810, at *18.  Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the

matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *17. This "lodestar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable client would be willing to pay." *Id.* The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Mahoney*, 2016 WL 6585810, at *19 (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014)).

Plaintiffs are also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).

Plaintiffs requested permission to move for attorneys' fees and costs at the conclusion of this matter. (Pls. Supp. Mem. at 20.) The undersigned recommends that Plaintiffs be permitted to submit their contemporaneous time records, attorney rates and qualifications, as well as documentation to support their costs calculations, within fourteen days after the Court enters judgment, pursuant to Fed. R. Civ. P. 54, in order for the Court to award reasonable attorneys' fees and costs.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that default judgment be entered against Defendants, finding them liable for violations under the FLSA and NYLL, and Plaintiffs be awarded damages in the total sum of $457,542.24, plus pre- and post-judgment interest, comprised of:

(i)     For Plaintiff Torres:

       a.   **$53,870** in unpaid overtime compensation;

       b.   **$5,000** in statutory damages for the NYLL wage notice claim;

       c.   **$5,000** in statutory damages for the NYLL wage statement claim;

       d.   **$53,870** in liquidated damages under the NYLL;

       e.   **$4,116.80** in pre-judgment damages, plus **$13.28** per day from October 13, 2015 to the date of judgment;

(ii)    For Plaintiff Deciderio:

       a.   **$54,036** in unpaid overtime compensation;

       b.   **$5,000** in statutory damages for the NYLL wage notice claim;

       c.   **$5,000** in statutory damages for the NYLL wage statement claim;

       d.   **$54,036** in liquidated damages under the NYLL;

       e.   **$3,729.60** in pre-judgment damages, plus **$13.32** per day from October 13, 2015 to the date of judgment;

(iii)   For Plaintiff Deciderio-Rios:

       a.   **$96,786** in unpaid overtime compensation;

       b.   **$5,000** in statutory damages for the NYLL wage notice claim;

       c.   **$5,000** in statutory damages for the NYLL wage statement claim;

       d.   **$96,786** in liquidated damages under the NYLL;

      e.   **$10,311.84** in pre-judgment damages, plus **$23.87** per day from October 13, 2015 to the date of judgment;

(iv)    Post-judgment interest as provided in 28 U.S.C. § 1961, to run from the date of judgment until judgment is satisfied; and

(v)    Reasonable attorneys' fees and costs, to be submitted within fourteen days of the entry of judgment.

Plaintiffs are directed to serve this Report and Recommendation on Defendants forthwith and file proof of service in the docket by **March 18, 2020**.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
           March 12, 2020

24